is Milchtein against Chisholm. Ms. Youngs. May it please the Court, my name is Corinne Youngs and I represent the appellants, the Milchteins. This case involves the constitutional right of parents to raise their children according to their own values and morals, and not to have that fundamental right infringed upon by any government agency. It does not present that question. The question is, the only question before us is whether we have a justiciable controversy. It will present the underlying question if the case gets reversed. So we need to address justiciability. Yes, Your Honor, that is correct. I'm merely presenting the main issues in this case to better understand why this case is not moot and why it's not barred by Rooker-Feldman. It's a mistake to presume that this case can only live as long as S.M. and C.M. are minors in the custody of the state. The Milchteins are the ones who are constitutionally harmed when the Milwaukee agencies entangle themselves in and substitute their own judgment for those of the natural and custodial parents on religious education and medical issues. Today, because the Milchteins have 12 other minor children, there is not only a mere possibility that the harms alleged in this case will occur again, but that possibility has now become concrete. Between the district court's erroneous decision and the filing of this appeal, another child has been taken from the Milchteins' home and subjected to the same offending policies and agency actions. What's the initial of that one? Is that D.M.? Yes. So that's the third? Yes, this is the third child that is in Milwaukee County custody. And this is also, we've also filed a motion to supplement the record to provide this information because it speaks directly to the issue of mootness. The Milchteins' case is live. It's not moot because the Milchteins have a cognizable interest in the outcome. The Milchteins have 12 other children, and they are the ones harmed in this case, not the children in this case. Potentially harmed, you mean? The Milchteins are harmed. Their constitutional rights were violated when SM and CM were in children's courts, and the Milwaukee County agencies utilized their procedures and practices that violated the Milchteins' rights to raise their children, according to their values and their beliefs. And most importantly, it is now not moot because we do have another child that is in Milwaukee County custody who is now subject to the same policies and practices as those used in CM and SM's cases. Well, counsel, to the extent you, the extent, if any, that we grant the motion to supplement, don't you just set up a problem under Younger against Harris? Because now the case is pending in state court, and Younger requires a federal court to abstain. We're addressing issues here that have already occurred to both CM and SM. Look, we can't resolve issues about the past. Your theory about why the claim is justiciable is that the Milchteins have other children, so that these issues may arise in the future. The contention that it has indeed arisen and is now being litigated in state court is what brings Younger to the fore. So the question that I'm asking you is why, if we grant the motion to supplement and consider the third eldest child, why there isn't a Younger problem? Your Honor, I'm not prepared to answer that question, but I can speak to the fact that we are here to resolve all of the Milchtein's constitutional issues and do that to protect their constitutional rights going forward, because they don't know that their constitutional rights are being violated until after it happens, so we are protecting that and all of their children. There are a lot of litigants who don't trust or want to be in state court, but the Younger Doctrine says that when state litigation is ongoing, with the state as a plaintiff to carry out a state policy, the federal court is obliged to abstain. And I don't see why that doctrine, if you get over the justiciability problem, why you haven't just dropped into a Younger problem. Your Honor, I'm not prepared and I did not brief this issue, but I'm happy to answer this and supplement. In part, I assume, because we haven't granted the motion to supplement the record, but there are two options. If we deny the motion to supplement the record, it's hard to see a justiciable dispute. If we grant the motion to supplement the record, it's hard to see an answer to the Younger problem. Your Honor, even if you don't supplement the record, there is still a justiciable dispute here. The Milstein's have 12 other children, and their case is live as to those 12 other children. And we are seeking perspective relief for those children to ensure that their rights will not be violated the next time this occurs. This is the best remedy for our clients. This is the best remedy because we can address all of the constitutional claims at one time, and we can protect them before they're violated again. But if there are state proceedings that are initiated with regard to the remaining children, you can litigate all these issues during those proceedings, can't you? Yes, you can. But again, the Milstein's don't know that they're constitutional claims, that their constitutional rights are being violated until after it happens. And in this case, the Milstein's constitutional claims developed over the course of these children's proceedings. It wasn't one instance where the parents didn't receive notice or consent or opportunity to be heard for a medical appointment. It's all these medical appointments that happened over the course of years. And so it's best for these issues to be addressed in this federal case and to protect from these instances happening again in the future to them. What's going on in the state court with regard to, I don't know whether it's 12 or 13 kids, but whatever it is, which is it? Is there a third one already? I know she went to a runaway house. Yes, there's 15 children. Three are adults, and so they have 12 remaining. So there is an adult now. Yeah, three are adults now, other 15 children. Okay, and what's going on with the other, well, the next person? I guess the, what, 12th? Anyway, let's count here. It's down to what? 11 at home, one in Milwaukee County custody that are minors. Okay, there's one in custody that's a minor now. Yes. And what's going on with that one as far as litigation is concerned? Well, speaking cautiously because we are speaking of children and confidential issues, DM is in Milwaukee County custody. She is going to be placed in a foster home, a permanent foster home. She is going to be placed in school, probably public school. She is going to, she's already been taken to medical appointments without the parents. And your client objects to all of that, right? Yes, these are the issues that the parents take issue to in this case, that the policies and procedures that the Milwaukee agencies invoke revolve around. In the form that it's now in, is there an availability, at least a motion to join, something that you can litigate at the present condition? Yes, but again, this is the best way to protect not only the current minor that is in the custody, but all future ones. Well, maybe there would be some sort of a precedent set with this one, if you were to win whatever you try to get as injunction or separation. When I look at your index, appendix, I'm sorry, there seems to be a lot of dispute about diet, for example, and that it's not kosher the way they look at it. And that may be, I don't know what's causing the kids to run away. They're denied food they want to eat, probably. They're Orthodox Jews, and they have very strict customs, and so it's very important to the Milsheens that their children abide by these customs and traditions. And the Milwaukee agencies are solely deciding, for example, placement for religious observance or for foster care. And the foster parents aren't following that same diet requirement. Based on the fact that they're Jewish. But just because a person's Jewish doesn't mean that it's the same belief as the Milsheens. It's contrary to the Milsheens. It's hostile to the Milsheens. And I see that my light has come on, so I'd like to reserve my time for rebuttal. Certainly, Ms. Youngs. Mr. Bellavia. Thank you. May it please the Court, I'm Assistant Attorney General Tom Bellavia, and I represent the defendants' appellees in this case. As has been indicated already, this appeal presents only two narrow issues, the correctness of the district court's ruling on mootness and the correctness of its ruling on Rooker-Feldman, as well as the pending motion to supplement the appellate record that has been discussed. I'd like to jump right in and respond to a couple of the matters that were just under discussion, particularly with regard to these new facts and the motion to supplement the appellate record. I want to emphasize the very limited scope of the proffered declaration, the limited scope of the proffered new facts that have actually been presented to this court to be added to the record. Because of the plaintiff's concerns about the confidentiality of all child welfare records under Wisconsin state law, they put in a very limited record. You have the option to go and get a court order from the state children's court allowing use of those records, and that is, in fact, what was done in order to create the district court record in this case. But they didn't go and get a state court order, so they put in this very narrow, this very limited declaration that contains very few facts. And, in fact, it does not contain all the facts that have been talked about already here this morning, some of which were brought up by opposing counsel and some of which were raised in response to a question from the court. There was a statement that the third child, D, was taken from the home. I don't think that's not reflected in the declaration. What's reflected is that she's out of the home and was in a runaway shelter. There was a statement that she's in county custody. We don't have any details of the circumstances of that custody. In the two children's court cases involving the older children that were at issue in the allegations in the complaint in this case, the county welfare authorities received reports of possible abuse or neglect of the child. They then conducted an investigation, determined that it was appropriate to take the child into protective custody, and filed CHIPS petitions, Petitions for Children in Need of Protective Services, in the state children's court. So these were definitely, clearly examples in which the child welfare authorities were receiving information, giving rise to concern about the well-being of these children, and then reaching into that family and reaching into the relationship between the children and the child in a way that gives rise to some of the alleged illegalities that the plaintiffs complained about in their complaint. What they seem to be saying, and this is sort of a general concern that I have, is about their religious concerns or religious rights of what their beliefs are and the beliefs that they want to raise their children by. And what they're saying is that kids being extracted one by one, put in foster homes or whatever, with people with whom they do not agree, under whatever definition of orthodoxy is, that that seems to be what they are looking for some way to protect, instead of just having them picked off one by one, I guess. And I'm not sure I know the answer, but that does seem to be the concern. That is certainly their concern, and our position is focusing on, is there currently a justiciable controversy before the court? So the question is, what were the illegalities that were alleged in the complaint? And are those alleged illegalities either ongoing? Have they been shown to be ongoing? Or has there a reasonable likelihood of their recurrence been established? And I think that's the applicable legal standard, and I don't think that either of those things have been established. So if a child, and I don't know, I have, because of the confidentiality concerns, restrictions under state law, I am in possession of very limited facts, probably a lot less than opposing counsel has about Dee. I know only very slightly more than what was in that declaration. I only know that she ran away and she's somewhere else at home. But it's my understanding that she ran away. Is that a fact? We know she ran away and she's away from home, and I assume somebody else is housing her. Correct. Correct. I'm assuming she has been placed into custody, as I understand it. But you're saying that our facts situation has not progressed to that. To my knowledge, there has been no CHIPS, neither the Milwaukee Division of Child Protective Services, nor the District Attorney's Office has filed a CHIPS or GIPS, GIPS is juvenile, petition in the case of Dee. Could you use some real English words? I don't follow their acronyms. We're not specialists in child custody proceedings in Wisconsin. Could you say what you just said, but using words? Child Protective Services case. I don't think that a child in need of protective services petition has been filed by either the District Attorney or the Division of Milwaukee Child Protective Services in the case of Dee. I think it's my understanding that she may have filed a petition on her own behalf, but that's not in the record before this Court. Are all those potential issues, I guess, mooted in that instance because the first two have been, or now three, are adults? I think that the particular claims that were raised in the complaint in this case are moot for those reasons. The children are completely out of the system. They're not children. They're adults now. And so they're no longer subject to the jurisdiction of the Children's Court. Those issues are not ongoing. To the extent that when the District Court asked, when we had oral argument on the summary judgment motion, the response from the plaintiffs to the questions from the District Court was the same thing that was said here today. They have 12 more children, and we fear that there's going to be a recurrence. But they have yet to produce evidence that gives rise to a reasonable likelihood that the illegalities that were alleged in the complaint are likely to recur. I'd also like to address the younger abstention question that was discussed earlier. Originally, at the time that the complaint in the District Court was filed, the first child, C, had actually turned 18 already and was out of the system, and then the second child, S, was still in the system. And one case, the case that has allegations in the complaint, was ending almost simultaneous with the time when the federal complaint was filed. But she immediately had another case that commenced because she ran away after her first case was dismissed from Children's Court, and that gave rise to a second case. So there, there were ongoing facts that really were quite continuous with the things that were at issue in the complaint. The plaintiffs initially filed a preliminary injunction motion, which was subsequently voluntarily withdrawn. But while that motion was pending, we filed a brief in opposition to that motion and did raise younger abstention at that time because there were both pending and completed cases that involved at that point in time. So we argued mootness as to the first child and younger abstention as to the second. By the time we got to summary judgment here, there were no pending cases at the time of summary judgment, and so younger was not an issue. But I agree with Judge Easterbrook that I think the younger issues are real ones and that... Well, that depends on details, right? Younger applies to proceedings brought by states in order to vindicate state policy. If child number four is just a runaway, then there's no proceeding. If child number four has brought her own proceeding, then younger is irrelevant because no proceeding brought by the state. Now, even if we take the affidavit in the motion to supplement the record, we don't know the answer to those matters. That's correct, and I agree. We have a representation of counsel, Ms. Young's, that there is a proceeding, but it's not in the Milchstein affidavit. Correct. And I would only add that I think that if there is no action brought by the state that would be subject to younger, then I think that just strengthens our argument that the events involving child number four do not involve a recurrence of the illegalities that were alleged with regard to children one and two, which related to the state coming and reaching into the family. We seem to be in an abyss, I guess I would call it. You get to, with the kids each progressively getting older, they fall into a different category, and then once they're in that category and then they age out of it before anything is done, and then they go to the next one. I don't know the answer, frankly, and what facts we could add and what we could discover if we allow any supplement, but it does seem to be sequential. Because the child welfare system only operates until the child is 18, there is a time limit. There is, therefore, a possibility for children to age out of the system. I would only emphasize on that point that if one raises these issues before the children's court, as they're arising, that time concern is greatly diminished. When the problems arise and a child is placed in a Sabbath placement with a family whose practices are offensive to the Milsteins, then if that issue is raised with the children's court at that time, there's an opportunity to address it in a timely matter. If a couple of years go by and then you file a massive federal lawsuit with lots of claims that you've accumulated, the time problem is greatly exacerbated in that circumstance. I think we actually have covered most of the matters that I wanted to talk about. We haven't talked about Rooker-Feldman. We've argued it pretty thoroughly in the briefs. Yes, but I must say I can't see why the Rooker-Feldman doctrine would be relevant. The Milsteins aren't asking to upset the judgments in either of the two state court cases. That's the only thing Rooker-Feldman is about. Well, I guess we've obviously relied on the inextricably intertwined element. You realize that both the Supreme Court and this circuit have said that that's not a doctrine and have told district judges to stop talking about that. The parties don't cite Saudi basic industries. They don't cite our opinion in Richardson. It is a non-doctrine that has been officially rejected. Now, why the district court talked about it and why the parties have ignored the law established by the Supreme Court is not clear to me. Then I shall talk about it no further, Your Honor. Good idea. If there aren't any other questions from the court, then I would just conclude that we would ask the court to deny the pending motion to supplement the record and to affirm the district court's decision on grounds of mootness. Thank you. Okay. Thank you. Anything further, Ms. Youngs? Yes. Going back to abstention, that does not apply here because we are not litigating what is being litigated in state court. We are looking at independent agencies' policies and independent agency action. The court wants to know what's in the best interest of the child, and they say to an agency, go see what's fit. Go find a placement. They utilize their own policies and make actions and determinations for that child, and that is what we're challenging. We're not challenging the state court. We're trying to simply supplement the record only to demonstrate that this issue is not moot. It's more than speculation. In the district court hearing, the judge said that it's as if the Milstein's have a stick of dynamite with no match. The match has been found. The dynamite has been lit, and it has exploded. It is happening again. Well, but you had time to think about Younger when you were sitting there. Is there a response to the Younger problem? That is what my response. We're not litigating what's happening in the state court. We're challenging these agency policies and actions. If you're not litigating anything overlapping what is going on in state court, then I don't understand why there is any federal justiciable issue. We have federal constitutional claims. The claims concern the potential management of state court litigation. I disagree. They concern policies that underneath these agencies and the actions that the agencies do. They're pertinent to your clients only insofar as they affect or may affect the conduct of state litigation. So if there is no state litigation in the offing, then you're just asking for an advisory opinion. If there is state litigation, you're not asking for an advisory opinion, but there's a Younger problem. That's where I'm getting hung up. We're not asking for these decisions that are made are not made in the court. We're not challenging that the child was placed. We're not challenging that the child has medical care. We're challenging what was done to arrive at that conclusion. Then it looks like you're asking for an advisory opinion. If the issues you're raising don't affect the conduct of the state litigation, then you're just asking for an advisory opinion. I don't see any way around that. What you're challenging is a policy of the state and how they operate and the people who operate within it. Yes. And you're worried about what's going to happen to the kids, but a kid is not part of your challenge to the policy. And I think that's the problem, what we're dealing with. It's an external attack on what the state does in general. And in general, as Judge Eastwood points out, we're sort of in an advisory opinion saying, you know, that's very nice or something. But once it's tied to a particular child, then that gets into the state court and we go through the same process we have with the other initial kids. But after that process has occurred, the Milstein's rights have already been violated under this policy. I mean, we're challenging. We don't want just an advisory opinion. We want these policies to be found invalid. Outlawed. Yes, under the Constitution. We have three policies we're challenging, and they're operating on these policies, and we want them to be found invalid for all of the future children that are going to come through this court, because at some point they're going to be coming again and the Milstein's constitutional rights are going to be violated and they won't be able to redress that until after the fact that it's happened. That seems to rest on a prediction that the state court will violate the Constitution. I don't see any basis for that prediction. The whole point of Younger is that the federal court cannot indulge that assumption. My time has ended. Would you like me to answer? You have about 50 seconds left, but you really need to address that problem. We can't simply assume that the state judiciary will violate the federal Constitution. We're not saying that the state judiciary is violating. We're saying that the agencies of the Milwaukee County agencies that are finding placement for these children, taking care of their medical needs, are the ones violating it, because the court has deference to those individuals to make these determinations. Has there been any legislative challenge at all to this policy? Not that I'm aware. I assume they operate under some kind of a state law or edict. We are challenging one statute, and the other two are not under state statute. My time has expired. Thank you, Ms. Younger. The case is taken under advisement.